Jeffrey A. PHIPPS, Petitioner,

v.

Ken ROMANOWSKI, Respondent.

Civil No. 05–10156.

United States District Court,
E.D. Michigan,
Southern Division.

July 14, 2008.

Jeffery Phipps, Jackson, MI, pro se.

Brad H. Beaver, Brenda E. Turner, Michigan Department of Attorney General, Lansing, MI, for Respondent.

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

DAVID M. LAWSON, District Judge.

The petitioner, Jeffrey A. Phipps, presently confined at the Parnall Correctional Facility in Jackson, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner pleaded no contest to one count of child sexually abusive activity, Mich. Comp. Law § 750.145c(2), in the Newaygo County, Michigan circuit court. He was sentenced to an indeterminate custody sentence of twenty months to twenty years. The petitioner contends that the trial court erred in denying his motion to withdraw his plea where the plea was unintelligent and involuntary, and he received ineffective assistance of counsel. The respondent has filed a response to the petition arguing that the petitioner's claims lack merit. The Court finds that the petitioner's no contest plea was knowing, intelligent, and voluntary, and counsel was not constitutionally ineffective. Therefore, the Court will deny the petition.

### I.

On May 15, 2003, the petitioner pleaded no contest in the Newaygo County, Michigan circuit court to one count of child sexually abusive activity in violation of Michigan Compiled Law § 750.145c(2). The charge was based on the accusation that the petitioner coerced two minor girls to strip for him by providing them with alcohol and offering them money. On June 30, 2003, he was sentenced to a minimum custody term of twenty months and a maximum term of twenty years. He filed a motion to withdraw his plea on April 27, 2004, which the trial court denied.

The petitioner's motion to withdraw his plea, like his argument before this Court, was premised on the notion that his plea was rendered involuntary due to the trial court's off-the-record promise that he would be sentenced to no more than twenty months in prison. The petitioner claimed that his trial counsel had made a similar representation.

The transcript from the May 15, 2003 plea hearing reads in relevant part as follows:

THE COURT: We'll go on the record in the case of the People of the State of Michigan versus Jeffrey Alan Phipps. Today's the date and time set for trial. The record should reflect that the prosecutor's office is represented by Mr. Brian Thiede. Mr. Phipps is here with counsel, Mr. Mark Schropp. The Court has been given to understand that a plea agreement has been worked out in this case. If that's correct, I would ask Mr. Thiede if you would state that agreement for the record.

MR. THIEDE: Your Honor, we have offered and remain consistent, the minimum being 20 months in this case, statutory maximum is 20 years, as charged. We anticipate the defendant would enter a plea in accordance with that.

MR. SCHROPP: Your Honor, Mark Schopp on behalf of Mr. Phipps. That's my understanding.

(Off-the-record discussion)

. . . .

THE COURT: Do you solemnly swear or affirm that the testimony you are about to give will be the truth, the whole truth, and nothing but the truth, so help you God?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that the plea agreement provides that in exchange for your plea of guilty [sic] to Count 1, the prosecutor is moving to dismiss Count 2 and Count 3? In addi-

tion, he's recommending to the Court that the maximum minimum term in your case not exceed 20 months. So what that means, if following the recommendation of the prosecutor, that the harshest sentence that the Court would give you in terms of incarceration would be not less than 20 months nor more than 20 years with the Michigan Department of Corrections. Is that the agreement, as you understand it to be?

MR. SCHROPP: For the record, 20 months would be the recommended minimum and then you have to serve that. 20 years is just a statutory maximum.

THE DEFENDANT: No more than 20?

MR. SCHROPP: Right.

THE DEFENDANT: Yes, sir.

THE COURT: Also, do you understand that by pleading no contest that you would be convicted of this offense the same as if you plead guilty? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: So, in other words, if I accept your plea of no contest, it would result in your being convicted of one count of child sexually abusive activity. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Now, have I stated the agreement as you understand it to be?

THE DEFENDANT: Yes, sir.

THE COURT: Were there any promises made to you in addition to what I just stated on the record in order to get you to plead no contest?

THE DEFENDANT: No, sir.

Plea Hearing Tr. at 3–6.

After this exchange, the trial court proceeded to ensure that the petitioner understood the various rights he was waiving and that he was doing so voluntarily. The court then returned to the issue of off-the-record promises before accepting the plea:

THE COURT: Are you satisfied the Court complied with MCR 6.302 rules pertaining to taking a no contest plea, Mr. Thiede?

MR. THIEDE: Yes, your Honor.

THE COURT: Mr. Schropp?

MR. SCHROPP: I am, your Honor.

THE COURT: It appears to the Court that the defendant is competent to make this plea. Is this your understanding, Mr. Thiede?

MR. THIEDE: Yes, your Honor.

THE COURT: Mr. Schropp?

MR. SCHROPP: It is, your Honor.

THE COURT: Were there any promises, threats, or inducements which haven't been stated on the record, Mr. Thiede?

MR. THIEDE: None, your Honor.

THE COURT: Mr. Schropp?

MR. SCHROPP: No, your Honor.

*Id.* at 10–11.

As stated above, sentencing occurred on June 30, 2003. The transcript shows that the petitioner apparently was caught off-guard by the term imposed:

THE COURT: Anything that you wish to tell me before the Court sentences you on this case?

THE DEFENDANT: No, sir.

THE COURT: For the record, the court acknowledges that Sentence Guidelines call for a sentence between 24 to 40 months. The court will sentence consistent with the plea agreement that was worked out in this case. It would be the sentence of the court that you serve not less than 20 months nor more than 20 years with the Michigan Department of Corrections.... For the record, the court acknowledges that this sentence is a departure from the Sen-

tence Guidelines from the low end, but the court would indicate that there was a plea agreement and that is the reason that the court is departing from the Guidelines. Do you have any questions regarding your sentence, Mr. Phipps?

THE DEFENDANT: I believe you said no less than 20 months, nor more than 20 years?

THE COURT: Right. That was your plea agreement.

(Off-the-record discussion between Defendant & Mr. Schropp)

THE COURT: Mr. Phipps, when I took your plea agreement I recall explaining that to you, that the maximum set by law is 20 years, the minimum is 20 months.

THE DEFENDANT: All right.

THE COURT: So I don't think there could be any confusion—there shouldn't be any confusion on your part regarding that.

THE DEFENDANT: Well, when I went through the plea agreement, he [Mr. Schropp] told me that morning no more than 20 months, and then I don't know what was said in the courtroom in your chambers, and then again a few minutes ago he told me again no more than 20 months.

THE COURT: On the minimum. So the maximum I don't have any control of. The maximum is set by law, so you're not treated any different than any other defendant that's convicted of this type of crime. You know, the maximum is set according to the maximum penalty. The court sets the minimum, and I did that consistent with the plea agreement in this case. And I would note that Mr. Schropp negotiated on your behalf a plea agreement that's less than what the Sentence Guidelines would call for. You know, there's a low and a high end, and you're getting less

than the low end of the Sentence Guidelines, so I would suggest that maybe Mr. Schropp did a reasonable job in representing you.

THE DEFENDANT: Yes, sir.

THE COURT: Any other questions?

THE DEFENDANT: No, sir.

Sentencing Tr. at 7–9.

In support of his motion to withdraw the plea filed roughly ten months later, the petitioner submitted an affidavit in which he testified that his trial counsel and the judge promised the petitioner he would serve no more than twenty months in prison. The affidavit reads in relevant part as follows:

5. On the morning of trial, attorney Schropp told me for the first time that the prosecution was going to bring a lot of other girls to testify against me. I wanted to know how they could do this at the last minute. Then I told attorney Schropp that I wanted to go to trial because I could prove that the charges were false.

6. Attorney Schropp told me that the prosecution could bring in other girls to testify against me "because of all the new sex laws." He also told me that if I did not plead no contest that day, that my bond would be immediately pulled and I would immediately go to jail.

7. Attorney Schropp then told me "Just take the 20 months. The time caps at 20 months. It caps at both ends."

8. At that point, I agreed, feeling under enormous pressure. Attorney Schropp told the judge and the prosecutor that there was a plea deal, and we all went out of the courtroom into the judge's chambers with the court reporter. The plea was taken in the secretary's room immediately outside the judge's office.

9. At the start of the plea, there was an "off the record" conversation. Judge Monton told me something to the effect, "Jeff, you're just going to do your 20 months. With the way the jails are overcrowded, if you keep clean the most you'll do is 20 months." Then, we went back on the record and did the plea.

. . . .

12. As I said, I am innocent of these charges, and would not have pleaded no contest except for the extreme pressure I was under and the statements made to me by my attorney and the judge.

Pet. for HC, Ex. 1, Aff. of Phipps at ¶¶ 5–9, 12.

The trial court held a hearing on the petitioner's motion to withdraw his plea on May 25, 2004. The court denied the motion from the bench, finding the petitioner's version of events to be a complete fabrication:

As I recall, there was an off-the-record discussion between Mr. Schropp and Mr. Phipps apparently in an effort for the two of them to clarify exactly what the plea agreement was. The court did not make any such statement in the off-the-record discussion that he would only receive 20 months. That simply did not occur. His affidavit is false. And I think as evidenced by the fact that on the record I took great pains to explain to him exactly, you know, what the plea agreement was, and the transcript shows that I told him that he would receive 20 months minimum to a maximum of 20 years. And then thereafter Mr. Schropp, for the record, said on page 5: "MR. SCHROPP: Twenty months would be the recommended minimum and then you would have to serve that. Twenty years is the statutory maximum. THE DEFENDANT: No more than 20? MR. SCHROPP: Right."

So the court feels that in looking at the entire transcript that he clearly understood that he was looking at a minimum term or a maximum term. Minimum term being no more than 20 months, maximum term being 20 years; so the court would deny the motion.

Mot. to Withdraw Tr. at 7–8.

The petitioner filed an application for leave to appeal in the Michigan Court of Appeals arguing: (1) Michigan Court Rule 6.302(F), requiring that a verbatim record be made of a plea proceeding, was violated because an off-the-record discussion was held during the plea proceeding, and the court should have given the petitioner the opportunity to withdraw the plea under Michigan Court Rule 6.310(B); (2) the trial court erred in denying his motion to withdraw the plea where there were off-the-record promises of leniency; and (3) he received ineffective assistance of counsel. The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. Phipps*, No. 256433 (Mich.Ct.App. Aug. 30, 2004).

The petitioner then filed an application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals. The Supreme Court denied leave to appeal because it was not persuaded the questions presented merited its review. *People v. Phipps*, 472 Mich. 879, 693 N.W.2d 820 (March 29, 2005) (Table).

The petitioner now seeks habeas relief on the following grounds:

I. The trial court erred in denying petitioner's motion to withdraw his plea of no contest where there were off-the-record promises of leniency.

II. Petitioner received ineffective assistance of counsel when, on the day that his trial was set to start, his counsel informed him of a plea offer

in which both ends of the sentence would be capped at 20 months which was not the case.

Brf. in Supp. at 5, 7.

The respondent has filed an answer to the petition asserting that the claims should be denied for lack of merit.

## II.

 The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin*

*v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520–21, 123 S.Ct. 2527 (quoting *Williams v. Taylor*, 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a

prisoner's case." *Id.* at 409, 120 S.Ct. 1495. The Court defined "unreasonable application" as follows:

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .

[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410–11, 120 S.Ct. 1495; *see also Eady v. Morgan,* 515 F.3d 587, 594–95 (6th Cir.2008); *Davis v. Coyle,* 475 F.3d 761, 766–67 (6th Cir.2007); *King v. Bobby,* 433 F.3d 483, 489 (6th Cir.2006); *Harbison v. Bell,* 408 F.3d 823, 828–29 (6th Cir.2005); *Rockwell v. Yukins,* 341 F.3d 507, 512 (6th Cir.2003) (en banc).

## A.

■ The petitioner first claims that the trial court should have granted his motion to withdraw his plea because the plea was based upon an unfulfilled promise of leniency, rendering his no contest plea unknowing and involuntary. The petitioner argues that during the plea proceeding, an off-the-record discussion occurred during which the trial judge promised the petitioner that he would serve no more nor no less than twenty months imprisonment.

■ A guilty plea, and by analogy a plea of *nolo contendere,* must be supported by "an affirmative showing that it was intelligent and voluntary." *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 23

L.Ed.2d 274 (1969). The Sixth Circuit has observed that:

[a] plea is valid if it is entered voluntarily and intelligently as determined under the totality of the circumstances. *Brady v. United States,* 397 U.S. 742, 749, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The constitution requires the circumstances to reflect that the defendant was informed of all the direct consequences of his plea. *Id.* A plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving, or unintelligent if the defendant does not understand the charges against him. *Henderson v. Morgan,* 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).

*United States v. Ormsby,* 252 F.3d 844, 849 (6th Cir.2001). A showing of intelligence and voluntariness generally is made by the State's production of a transcript of state court proceedings to establish that the plea was made voluntarily. *McAdoo,* 346 F.3d at 166 (citing *Garcia v. Johnson,* 991 F.2d 324, 326 (6th Cir.1993)). The Supreme Court has held that a defendant must have "sufficient awareness of the relevant circumstances and likely consequences" of his plea. *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Thus, a no contest plea is voluntary if it is made with full knowledge of its direct consequences, and it will stand unless it is made under duress or as a result of threats, misrepresentations, or improper inducements. *Id.* at 755, 90 S.Ct. 1463. In addition, the Sixth Circuit has stated that in cases challenging the voluntariness of a plea agreement a petitioner is generally bound by his in-court statements regarding his understanding of the plea. *See Ramos v. Rogers,* 170 F.3d 560, 563–64 (6th Cir.1999).

The dispute in this case focuses solely on the sentence the petitioner received, which he says was to be no more than twenty months. Michigan uses an indeterminate sentencing scheme for custodial sentences in which the sentencing court sets a minimum term of imprisonment that may be as long as two-thirds of the statutory maximum sentence. *See* Mich. Comp. Laws § 769.34(2)(b); *People v. Babcock*, 469 Mich. 247, 255 n. 7, 666 N.W.2d 231, 237 n. 7 (2003) (citing *People v. Tanner*, 387 Mich. 683, 690, 199 N.W.2d 202, 204–05 (1972)). If the statutory maximum sentence is life in prison, which is not the case, then the sentencing court has discretion to set the maximum term as well. *See Babcock*, 469 Mich. at 255 n. 7, 666 N.W.2d at 237 n. 7. Otherwise, the maximum term is the maximum prescribed by the statute that defines the crime. *Ibid.* The Michigan parole board has the discretion to release a prisoner after he has served his minimum sentence. Mich. Comp. Laws § 791.233(1); *Hopkins v. Michigan Parole Bd.*, 237 Mich.App. 629, 644 n. 7, 604 N.W.2d 686, 694 n. 7 (1999). The plea agreement in this case addressed only the minimum sentence. To complete the criminal sentence under the indeterminate sentence law, the sentencing court also must establish a maximum term, which, as noted earlier, is set automatically by statute.

In light of this sentencing scheme, which was not discussed in any detail on the record, it is possible to see how the petitioner and the lawyers were, perhaps, talking past each other when discussing the twenty-month sentence. When the petitioner asked his lawyer, "No more than 20?" and the lawyer responded "Right," one can see how the petitioner might have been led to believe that he would serve no more than twenty months in prison under all circumstances. The lawyer's explanation that preceded this exchange—"For the record, 20 months would be the recommended minimum and then you have to serve that. 20 years is just a statutory maximum."—did little to illuminate the situation.

■ However, for a no contest plea to be voluntary, "the defendant need only be aware of the direct consequences of the plea" and "the maximum sentence that could be imposed." *King v. Dutton*, 17 F.3d 151, 153–54 (6th Cir.1994). There is no question that the record discloses that this information was given to the petitioner. During the plea colloquy, the petitioner stated that no one coerced or pressured him into accepting the plea. The petitioner was informed on three occasions the he faced a maximum sentence of twenty years imprisonment, once each by the trial court judge, the prosecutor, and defense counsel. The petitioner stated that there were no other promises, threats or inducements made which had not been placed on the record.

On the other hand, the petitioner's claim of an off-the-record promise is not entirely without evidentiary support. In addition to his affidavit, the transcript does contain a notation indicating that some off-the-record discussion occurred at the plea hearing, and the petitioner was seemingly surprised when the court announced his sentence. *Cf. Adams v. Burt*, 471 F.Supp.2d 835, 843 (E.D.Mich.2007) ("If the petitioner was laboring under a misapprehension of his maximum sentence exposure from the earlier plea hearing, it is reasonable to infer that he would have addressed that confusion when the facts were made clear at the sentencing hearing.").

■ Presented with this evidence, however, the trial judge rejected the petitioner's assertion that he had promised the petitioner he would serve no more than twenty months. This Court is bound by

such a factual determination unless it is clearly erroneous. *See* 28 U.S.C. § 2254(e)(1); *West,* 73 F.3d at 84; *see also Ramos,* 170 F.3d at 564 (stating that "the existence of any plea agreement, even an 'off-the-record' one, is a question of fact, and thus a ... finding that no such agreement existed is reviewed only for clear error"). The record in the present case contains ample evidence to justify the trial judge's conclusion. As an initial matter, the trial judge's position that he never made such a representation is entitled to substantial weight; obviously, the trial judge was in good position to know what he did or did not say. In addition, the petitioner's testimony at the plea hearing lends support to the judge's conclusion that the petitioner understood the nature of agreement when he tendered his plea. And on top of all this is the petitioner's testimony at the plea hearing that there were no off-the-record promises. *See* Plea Hearing Tr. at 6 ("THE COURT: Were there any promises made to you in addition to what I just stated on the record in order to get you to plead no contest? THE DEFENDANT: No, sir."). "Courts naturally look with a jaundiced eye upon any defendant who seeks to withdraw a [no contest] plea after sentencing on the ground that he expected a lighter sentencing." *United States v. Crusco,* 536 F.2d 21, 24 (3d Cir.1976). In this case, the Court remains all the more skeptical because the petitioner's own testimony directly contradicts his present claim of an off-the-record promise.

Moreover, the evidence suggests that the off-the-record discussion the petitioner had with his lawyer was no different than what was discussed on the record. The likely scenario was that the lawyer told his client that his minimum sentence would be "no more than twenty months," but what the petitioner heard him say was that he would *serve* no more than twenty months.

Without an understanding of the functioning of Michigan's brand of indeterminate sentencing, this misunderstanding remains a distinct possibility.

But there is no credible evidence that the petitioner was actually told he would serve only twenty months in custody. Rather, he was told that his maximum sentence would be twenty years. And he entered his no contest plea with this advice fresh in his ears, if not in his mind.

▮▮▮ To the extent the petitioner argues that the trial court should have offered him an opportunity to withdraw his plea under Michigan Court Rules 3.02(F) and 3.10(B), this claim is not cognizable on habeas review because it arises under state law. *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). It is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). A federal court is limited on federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Ibid.* Therefore, although there may be some merit to the petitioner's argument that the trial court should have affirmatively offered him an opportunity to withdraw his plea pursuant to Michigan Court Rules 3.11(B) based on an off-the-record discussion in violation of Michigan Court Rule 3.02(F), such error, if indeed there was any, does not justify habeas relief.

The petitioner is not entitled to habeas relief on the grounds that his plea was involuntary or unknowing.

### B.

▮▮▮ In his second claim for habeas relief, the petitioner argues that his attorney was ineffective because he incorrectly

advised the petitioner about the sentence he would face if he pleaded no contest. The petitioner claims that his attorney, like the sentencing judge, informed him that he would serve no more than twenty months. Had counsel not made this representation, the petitioner asserts that he would have insisted on going to trial.

The two-prong test set forth in *Strickland v. Washington* governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir.2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. 2052. The Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052) (internal quotes omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687, 104 S.Ct. 2052.

The *Strickland* framework applies to claims of ineffective assistance of counsel arising from a guilty or *nolo contendere* plea. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Carter v. Collins*, 918 F.2d 1198, 1200 (5th Cir.1990). The first prong of the test remains the same. *Ibid.* However, the prejudice requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill*, 474 U.S. at 59, 106 S.Ct. 366. In other words, the defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded [*nolo contendere*] and would have insisted on going to trial." *Ibid.*; *Carter*, 918 F.2d at 1200; *see also Smith v. United States*, 348 F.3d 545, 551–52 (6th Cir.2003).

The petitioner alleges that his trial attorney advised him that the maximum sentence he would receive would be twenty months imprisonment. As noted above, the record does not support the petitioner's claim. During the plea hearing, the petitioner was informed that the terms of the plea agreement were as follows: the harshest sentence the court could impose would be not less than twenty months imprisonment and not more than twenty years imprisonment. The petitioner acknowledged this and specifically denied that any promises had been made to him

other than those reflected on the record. His counsel also confirmed as much. Although the petitioner may not have fully appreciated the intricacies of Michigan's indeterminate sentencing scheme, any misunderstanding the petitioner may have had about the terms of the plea agreement should have been cured by the trial court's accurate explanation of the plea agreement and the maximum possible sentence. *Ramos,* 170 F.3d at 565. Although it is advisable for Michigan courts and defense lawyers to offer on-the-record explanations about the significance of a "minimum sentence" under Michigan law, this Court cannot conclude on the present record that the petitioner's attorney was ineffective in inaccurately explaining the plea agreement to him. Since there was no constitutionally deficient performance, the petitioner is not entitled to habeas corpus relief on this claim.

### III.

The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt. # 1] is **DENIED.**